IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01226-NYW

MICHAEL G. MOSER,

     Plaintiff,

v.

CAROLYN W. COLVIN,

     Defendant.

---

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

     This civil action arises under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34 (2012) for review of the Commissioner of Social Security's final decision denying Plaintiff Michael G. Moser's ("Plaintiff" or "Mr. Moser") application for Disability Insurance Benefits ("DIB"), and is before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). [#23, dated December 1, 2015].[1]   After carefully considering Plaintiff's Opening Brief [#19], Defendant's Response Brief [#20], Plaintiff's Reply Brief [#21], the entire case file, the Administrative Record, and the applicable case law, this court AFFIRMS the Commissioner's decision.

---

[1] For consistency and ease of reference, this Order utilizes the docket number assigned by the Electronic Court Filing ("ECF") system for its citations to the court file.  For the Administrative Record, the court refers to the page number associated with the Record, which is found in the bottom right-hand corner of the page.  For documents outside of the Administrative Record, the court refers to the page number assigned in the top header by the ECF system.  Where the court refers to the filings made in the ECF system in this action, it uses the convention [#___].

## PROCEDURAL HISTORY

This case arises from Plaintiff's fourth attempt to secure DIB based on chronic back pain status post fusion with degenerative changes and obesity. [#18 at 1]. Mr. Moser suffered a severe work-related injury on February 12, 2004, that was originally diagnosed as an annular tear at the L4/5[2] level of his spine. [#14-11 at 386; #14-14 at 538]. Due to increased pain and the failure of conservative treatments, Mr. Moser underwent L4 to S1 decompression and fusion surgery on his back on August 2, 2004. [#14-11 at 401, 410; #14-14 at 545]. Since his initial surgery, Mr. Moser has undergone three additional procedures: an August 2005 procedure to remove the hardware from the August 2004 surgery, [#14-3 at 6, 19-20, 22]; a second in 2005 to remediate a development of osteomyelitis, [id.]; and a third in November 2013 for an L3 through S1 lumbar decompression and posterior spinal fusion, [id. at 28-30]. Despite continued treatment, Mr. Moser claims that his lumbar, leg, and foot pain remains a severe hindrance to completing everyday tasks, especially working. [#14-8 at 152-153; #14-9 at 198-207].

On February 9, 2012, Mr. Moser filed a fourth application for DIB under Title II of the Act that is at issue in this instant action. [#14-5 at 72; #14-6 at 99-100, 103; #14-8 at 152-158]. Mr. Moser previously submitted three DIB applications—September 15, 2004; October 26, 2005; and September 8, 2008—each alleging the same February 2004 injury as the cause of his disability.[3] [#14-5 at 72; #14-6 101; #14-15 at 593]. All three applications were denied.[4] *Id.*

---

[2] Though denoted in the medical records as L45, this court understands this reference to relate to the lumbar vertebrae in the lower spine, numbered from L1-L5.

[3] The ALJ notes that in Mr. Moser's prior applications, he also applied for disability benefits, which this court construes as applications for Supplemental Security Income under Title XVI of the Social Security Act.

[4] The first, denied November 22, 2004, with no appeal whatsoever; the second, denied March 31, 2006, with no appeal whatsoever; and the third, denied initially on December 22, 2008, with denial upheld on July 22, 2011, by the Appeals Council following an ALJ hearing on December 9, 2009. [#14-5 at 72; #14-6 at 101].

Mr. Moser's most recent application alleges disability stemming from the same February 2004 injury; however, this application alleges disability beginning on December 10, 2009, at the age of 44—one day after an Administrative Law Judge upheld the denial of his third application. [#14-5 at 72, 92; #14-8 at 152-153; #14-9 at 167, 171-175, 198-207].

Mr. Moser has a tenth grade education, [#14-5 at 94; #14-6 at 99], and worked as an equipment operator for 8 years and as a delivery driver for a few months. [#14-8 at 162-163; #14-9 at 179]. Mr. Moser indicated that as an equipment operator he undertook various other positions such as a welder, mechanic, and septic system installer. [#14-9 at 238]. Each job required Mr. Moser to sit, stand, walk, climb, kneel, crouch, crawl, and handle, grab, or grasp big objects for ten (10) hours per day, and required Mr. Moser to lift materials approximately 50-100 lbs. [*Id.* at 187-189].

Despite the three previous denials, Mr. Moser's fourth application alleges that his pain caused by the February 2004 injury has become progressively more severe, prohibiting him from engaging in substantial gainful activity. [#14-5 at 72, 93; #14-8 at 152-153; #14-9 at 167, 171-175, 198-207]. This application was denied at the initial determination stage on August 20, 2012. [#14-5 at 72; #14-6 at 104-105; #14-7 at 107]. On October 22, 2012, Mr. Moser requested a hearing before an Administrative Law Judge, [#14-7 at 112-113]. Administrative Law Judge Richard Maddigan ("ALJ") held a hearing on September 24, 2013, [#14-5 at 87; #14-7 at 122], at which Andrew Youngman, an employee of Citizens Disability, L.L.C, represented Mr. Moser. [#14-7 at 110-111]. At the hearing, Mr. Moser did not testify; however, Mr. Youngman argued that Mr. Moser's conditions had been worsening since his previous denial. [#14-5 at 93]. Specifically, Mr. Youngman argued that between December 10, 2009, and March

31, 2010, Mr. Moser developed neuropathic foot pain, as well as worsening depression and lumbar pain. [*Id.*].

Dennis Duffin, a Vocational Expert ("VE"), testified at the hearing. [*Id.* at 94-98]. The VE testified that Mr. Moser's past job experience included a delivery driver, a specific vocational preparation ("SVP")[5] level four job, with medium exertion; an equipment operator, an SVP level six job, which included other skills such as a mechanic, SVP level seven job, medium exertion, welder, SVP level six job, medium exertion, and a septic system installer, SVP level four, medium exertion. [*Id.* at 94]. Next, the ALJ posited whether an individual could perform Mr. Moser's prior relevant work activities if that person was:

1. a person of Mr. Moser's work background, a tenth grade education, and an age of 44 years-old at the alleged on-set date;

2. a person who can perform a range of light activity;

3. a person who can occasionally bend, squat, kneel;

4. a person who can ambulate with the assistance of a cane; and

5. a person who cannot use leg or foot controls.

[*Id.* at 94-95]. The VE testified that a person with these limitations would not be able to perform Mr. Moser's prior relevant work activities. [*Id.*]. The VE continued, explaining that light exertional jobs in the national economy do exist for persons with similar limitations, such as a

---

[5] SVP refers to the "time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" *Vigil v. Colvin*, 805 F.3d 1199, 1201 n.2 (10th Cir. 2015) (citing Dictionary of Occupational Titles, App. C, Sec. II (4th ed., revised 1991); 1991 WL 688702 (G.P.O.). The higher the SVP level, the longer time is needed to acquire the skills necessary to perform the job. Jeffrey S. Wolfe and Lisa B. Proszek, SOCIAL SECURITY DISABILITY AND THE LEGAL PROFESSION 163 (Fig. 10-8) (2003). SVP level 3-4 is associated with semi-skilled work. https://www.ssa.gov/OP_Home/rulings/di/02/SSR2000-04-di-02.html.

storage facility rental clerk, SVP level two; an assembler of small products, SVP level two; as well as cashier II, SVP level two.  [*Id.* at 95].

On cross-examination, Mr. Youngman included an additional condition on the ALJ's hypothetical: that the individual would be able to sit or stand for only thirty minutes at a time before requiring ten-minute breaks throughout the workday.  [*Id.* at 96].  The VE answered that such a condition would "eliminate all competitive work."  [*Id.*].  Lastly, Mr. Youngman asked the VE how many job absences employers tolerate per month, to which the VE testified that a day and one-half per month was the common figure.  [ *Id.*].  Neither Mr. Youngman, nor the ALJ, questioned the VE further.  [ *Id.*].

Upon reviewing the evidence of record and hearing the above testimony, the ALJ issued his written decision on September 27, 2013.  [*Id.* at 69].  The ALJ concluded that Mr. Moser last met insured status requirements for DIB on March 31, 2010; that he did not engage in substantial gainful activity between the alleged date of on-set of December 10, 2009, through March 31, 2010; and that he had severe impairments including chronic back pain, status post fusion with degenerative changes, and obesity.  [*Id.* at 74-75].  At step four of the analysis, the ALJ determined that Mr. Moser had the RFC to perform light work, involving only occasional bending, squatting, and kneeling, a need to allow a cane for ambulation, and no use of foot or leg controls.  [*Id.* at 77-78].  Ultimately, based on that RFC, the ALJ determined that Mr. Moser was not disabled, as he could make a "successful adjustment to other [light] work that existed in significant numbers in the national economy."  [*Id.* at 83].

Mr. Moser requested a review of the ALJ's decision, which the Appeals Council denied on April 9, 2015.  [#14-2 at 1-5].  The ALJ's order thus became the final decision of the Commissioner.  20 C.F.R.  § 404.981; *Nielson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993)

(citation omitted).  Mr. Moser filed this action on June 11, 2015, [#1], invoking this court's jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole.  *Angel v. Barnhart,* 329 F.3d 1208, 1209 (10th Cir. 2003); *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted).  The court may not reverse an ALJ simply because it may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision.  *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart,* 395 F.3d 1168, 1172 (10th Cir. 2005)).  "It requires more than a scintilla, but less than a preponderance." *Id.*  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (citation omitted).  "[The court will] not reweigh the evidence or retry the case, [but must] 'meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met.'" *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quoting *Grogan v. Barnhart,* 399 F.3d 1257, 1262 (10th Cir. 2005)).  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (citation omitted).

**ANALYSIS**

**I.      The ALJ's Decision**

An individual is eligible for DIB benefits under the Act if he meets the insured status requirements, has not attained retirement age, has filed an application, and is under a disability. 42 U.S.C. § 423(a)(1).  A disability is "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or…last[s] for a continuous period of not less than 12 months…" § 423(d)(1)(A). An individual is determined to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy…" § 423(d)(2)(A).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act.  20 C.F.R. § 404.1520(a)(4).  *See also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  *Williams*, 844 F.2d at 750.  Step one determines whether the claimant is engaged in substantial gainful activity; if so, disability benefits are denied.  *Id.*  Step two considers whether the claimant has a medically severe impairment or combination of impairments, as governed by the Secretary's severity regulations.  *Id.*  If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, she is not eligible for disability benefits.  *Id.* at 751.  If, however, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.  *Id.*  Step three "determines whether the impairment is equivalent to one

of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity," pursuant to 20 C.F.R. § 404.1520(d).  *Id.*  (quoting *Bowen v. Yuckert*, 107 S. Ct. 2287, 2291 (1987)).  At step four of the evaluation process, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which defines what the claimant is still "functionally capable of doing on a regular and continuing basis, despite [his] impairments: the claimant's maximum sustained work capability."  *Id.*  The ALJ then compares the RFC to the claimant's past relevant work to determine whether the claimant can resume such work.  *See Barnes v. Colvin*, No. 14-1341, 2015 WL 3775669, at *2 (10th Cir. June 18, 2015) (internal quotation marks omitted) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (noting that the step-four analysis includes three phases: (1) "evaluat[ing] a claimant's physical and mental [RFC]"; (2) "determin[ing] the physical and mental demands of the claimant's past relevant work"; and (3) assessing "whether the claimant has the ability to meet the job demands found in phase two despite the [RFC] found in phase one.")).  "If the claimant is able to perform his previous work, he is not disabled."  *Williams*, 844 F.2d at 751.  "The claimant bears the burden of proof through step four of the analysis."  *Nielson*, 992 F.2d at 1120.

At step five, the burden shifts to the Commissioner to show that a claimant can perform work that exists in the national economy, taking into account the claimant's RFC, age, education, and work experience.  *Id.*

> A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability. The decision maker first determines the type of work, based on physical exertion (strength) requirements, that the claimant has the RFC to perform. In this context, work existing in the economy is classified as sedentary, light, medium, heavy, and very heavy.

*Williams*, 844 F.2d at 751-52 (footnotes omitted).  Next, the ALJ determines the claimant's "RFC category" by assessing the claimant's physical abilities as well as his exertional

limitations. *See id.* at 752. Additionally, the ALJ considers the claimant's nonexertional limitations, *i.e.*, sensory and mental impairments that may affect the claimant's ability to perform work-related tasks. *Id.* If the ALJ concludes that the claimant is not disabled based on these considerations, "this means that a significant number of jobs exist in the national economy for which the claimant" is able to perform. *Id.*

The ALJ found Mr. Moser was insured for DIB through March 31, 2010—an approximately three and one-half month timeframe from his alleged on-set date of December 10, 2009. [#14-5 at 74]. Next, following the five-step evaluation process, the ALJ determined that Mr. Moser had not engaged in substantial gainful activity since his alleged on-set date of December 10, 2009.[6] [*Id.* at 74-75]. In step two, the ALJ determined Mr. Moser had the following severe impairments: chronic back pain, status post fusion with degenerative changes, and obesity. [*Id.* at 75]. At step three, the ALJ determined that Mr. Moser did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Title 20, Chapter III, Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). [*Id.* at 77]. At step four, the ALJ found that Mr. Moser had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b), [*Id.* at 77], and was unable to perform his past relevant work as an equipment operator, [*Id.* at 82]. At step five, considering Mr. Moser's age, education, work experience, and RFC, the ALJ found there are jobs that exist in significant numbers in the national economy that Mr. Moser can perform. [*Id.* at 82-83].

Mr. Moser essentially raises two challenges to the ALJ's decision. First, he argues that the ALJ's RFC assessment erroneously failed to consider his use of a cane when walking *and*

---

[6] Mr. Youngman reported that Mr. Moser worked as a delivery driver of storage pods for two months in 2010, after his alleged on-set date. However, Mr. Moser provided no payment stubs documenting his employment. An earnings report shows $1358.50 for the year of 2010, which the ALJ concluded was an unsuccessful attempt at procuring substantial gainful activity. [#14-5 at 74-75].

standing, and the cane's interference with his ability to reach, handle, and finger.   [#19 at 4 (emphasis added)].   Second, Mr. Moser argues that the ALJ failed to meet his burden at step five because the ALJ failed to explain how Mr. Moser could perform the frequent reaching, handling, and fingering required of the jobs identified in the national economy, despite his use of a cane while walking and standing.   [*Id.* at 5-7].   The court considers each of these arguments in turn.

## II.     The RFC Assessment

In formulating an RFC assessment, the ALJ must consider all of the claimant's "symptoms, including pain, and the extent to which [these] symptoms can reasonably be accepted as consistent with the objective medial evidence and other evidence."   20 C.F.R. § 404.1529(a).   This requires the ALJ to consider medical signs and laboratory findings, statements by the claimant's treating or non-treating source(s), statements by the claimant, or any other statements regarding a claimant's symptoms to determine whether a physical or mental impairment(s) could reasonably produce the claimant's symptoms.   *See* 20 C.F.R. § 404.1529(a)-(c).   Next, the ALJ must determine the extent to which the intensity, persistence, and limiting effects of the claimant's symptoms limit his functional abilities.   *See id.*   Here, Mr. Moser contends that the ALJ's RFC assessment failed to adequately consider all of his limitations.   [#19 at 4].   Specifically, he contends that although the ALJ considered his need for a cane to ambulate, *i.e.*, walk or move about, the ALJ committed harmful error by not considering the cane's interference with his ability to reach, handle, and finger while standing.   [*Id.*].

### A.   The ALJ's RFC Decision

The ALJ began his analysis of Plaintiff's RFC by reviewing Mr. Moser's function report, [#14-9 at 199-206], and his personal pain questionnaire, [*Id.* at 207].   [#14-5 at 78].   Mr. Moser's function report alleges that he struggles with severe pain throughout the entirety of the day, and

that no position or activity offers any relief from the pain.  [#14-9 at 199].  Further, Mr. Moser alleges that he has bone spurs in his spine and feet; that he has arthritis in his hands, neck, and shoulders; that he has difficulty concentrating because of his pain medications; and that he has difficulties lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, climbing stairs, and seeing.  *See* [*Id.* at 199, 201, 204].  Similarly, Mr. Moser indicated on his personal pain questionnaire that his pain "radiates from [his] lower back to [his] abdomen area and down his legs;" pain that "never stops."   [*Id.* at 207].   The ALJ permitted Mr. Youngman to argue on behalf of Mr. Moser at the September 24, 2013, hearing that Mr. Moser's condition, during the relevant period under review, had worsened and deteriorated.  [#14-5 at 78].

The ALJ ultimately concluded that Mr. Moser's medically determinable impairments could reasonably be expected to cause Mr. Moser's alleged symptoms; however, the ALJ accorded Mr. Moser's statements, and those of Mr. Youngman, concerning the intensity, persistence, and limiting effects little weight.  [*Id.*]; *see also* 20 C.F.R. § 404.1527 (explaining processes for evaluating opinion evidence).  The ALJ held that Mr. Moser's longitudinal medical history was not consistent with his allegations of disability.  [#14-5 at 79].  The sparse treatment notes from the approximately three and one-half month period of disability revealed that, despite some mentions of increased back and leg pain by Mr. Moser, his physical examinations indicated no worsening of his symptoms.  *See* [*Id.*].  Rather, the ALJ found that Mr. Moser's treatment notes indicated that he voluntarily requested to discontinue taking the prescription drug Lyrica for his foot pain in December 2009, given the high cost of the prescription, but was later re-prescribed the drug in February 2010, to alleviate his foot pain. [*Id.* at 79; #14-11 at 380; #14-13 at 524].   Other treatment notes during this timeframe suggested that his visits to Betsy

11

DesJarlais, Nurse Practitioner ("N.P."), were for refills of his medications.  [#14-5 at 79; #14-13 at 516-521].   Moreover, the ALJ explained that Mr. Moser underwent no physical therapy or other treatment modalities during this timeframe, and did not return to his pain management specialist, Dr. Rook, until August 15, 2012.[7]  [#14-5 at 79; #14-11 at 386-387].

The ALJ also considered objective medical evidence dated after Mr. Moser's date last insured of March 31, 2010.  [#14-5 at 79-80].  For example, the ALJ identified treatment notes beginning in the fall of 2011 and going through 2013, indicating that Mr. Moser retained 5/5 motor strength in his bilateral extremities; that he ambulated without assistance; reported no recent falls or fear of falling; and that he did not have any pain he wanted to discuss at these visits.  *See, e.g.*, [#14-10 at 247, 260-261, 264-265, 267, 276, 300, 305; #14-11 at 387, 418; #14-12 at 423-424].   Additionally, the ALJ explained that a February 2011 magnetic resonance imaging ("MRI") taken of Mr. Moser's back, revealed some postoperative changes at L4-5 and L5-S1; however, there was no evidence "of recurrent or residual herniation, and no evidence of cauda equina compression or nerve root impingement."  [#14-5 at 79; #14-11 at 334].  The ALJ noted that these results were unchanged when compared to MRIs taken on August 15, 2005, and January 12, 2006, to which he concluded that Mr. Moser's condition had been stable throughout the relevant period under review.  [#14-5 at 79; #14-11 at 334 ("The remainder of the exam is normal.")].   These factors led the ALJ to conclude that Mr. Moser's statements regarding the intensity, persistence, and limiting effects of his medical symptoms were not entirely credible.  [#14-5 at 78].

Because the ALJ believed Mr. Moser's condition to have been stable since his previous denial of DIB, the ALJ found the report of consultative examiner, William Qutub, M.D., to be

---

[7] Mr. Moser's previous visit to Dr. Rook was in October 2009, approximately two months prior to his alleged on-set date.  [#14-11 at 386-387].

particularly insightful.   [*Id.* at 80; #14-15 at 593-600].   Dr. Qutub examined Mr. Moser on November 20, 2008, as part of Mr. Moser's third application for DIB.   [#14-5 at 80; #14-15 at 593-600].   Dr. Qutub diagnosed Mr. Moser with degenerative lumbosacral disc disease with post-surgical changes and dextrorotatory curvature, a history of fusion with subsequent hardware removal, obesity, hypertension, and a history of depression.   [#14-5 at 80; #14-15 at 599-600]. Dr. Qutub continued that Mr. Moser should be able to stand and walk for at least four-to-five hours per eight-hour workday; that he should be able to sit without limitations; that he should be able to frequently or occasionally carry 20-25 pounds before symptom aggravation; and that he should be able to ambulate without assistive devices.   [#14-5 at 80; #14-15 at 600].   Because Dr. Qutub's findings were consistent with the record during the relevant period under review, the ALJ concluded that Mr. Moser retained "the ability to perform light work, with such work involving only occasional bending, squatting, and kneeling, a need to allow a cane for ambulation, and no use of foot or leg controls."   [#14-5 at 80].

B.   The Medical Evidence[8]

Mr. Moser argues that the ALJ's RFC assessment constitutes error because the ALJ did not account for Mr. Moser's limited use of his hands while walking and standing caused by the use of a cane.   [#19 at 4].   As mentioned, when formulating an RFC assessment an ALJ must consider the combined effect of all of the claimant's medically determinable impairments, including the severe and non-severe.   *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); 20 C.F.R. § 404.1529(a); SSR 96-9p.   The ALJ's RFC assessment must be consistent with the record as a whole, and supported by substantial evidence.   *See generally Howard v. Barnhart*,

---

[8] The Commissioner suggests, "Because Plaintiff only challenges the vocational expert evidence, the medical facts are not relevant to this Court's decision." [#20 at 2].   This court respectfully disagrees, as Plaintiff challenges the ALJ's examination of the medical evidence in formulating his RFC assessment, and the ALJ's RFC determination rests explicitly on the relevant medical records.

379 F.3d 945, 947 (10th Cir. 2004) (holding that substantial evidence in the record supported the ALJ's RFC assessment); SSR 96-8p.  Moreover, a claimant's RFC is the most work a claimant can perform, not the least.   20 C.F.R. § 404.1545; SSR 83-10.   Mr. Moser argues that his required use of a cane while walking and standing constitutes an impairment under step four that the ALJ did not consider.  [#19 at 4].  Specifically, Mr. Moser contends that the constant use of a cane limits his ability to perform tasks with two functioning hands while walking or standing, which would severely interfere with his ability to perform light work.  [*Id.*].  Upon reviewing the evidence in the record, including the significant amount of medical evidence dated after Mr. Moser's date last insured, the court respectfully disagrees.

When reviewing an ALJ's decision, the reviewing court will not "reweigh the evidence or retry the case," *Flaherty*, 515 F.3d at 1070 (internal citation omitted), and will not reverse an ALJ's decision if it is supported by substantial evidence even if he could have reached a different conclusion, *Ellison*, 929 F.2d at 536.  In this case, the ALJ undertook a comprehensive review of the evidence in the record.  As indicated, Mr. Moser's most recent DIB application alleges disability in a relatively small three and one-half month window.  [#14-8 at 152-153].  The medical evidence from this time indicates that Mr. Moser sought treatment from Ms. DesJarlais about once a month for medication refills; however, there is little evidence of Mr. Moser's physical wellness other than his own subjective complaints about back and foot pain.  [#14-13 at 516-521].  There is no mention in the record, during the relevant period of review or otherwise, of the medical necessity to use a cane when standing.

In contrast to the sparse evidence in the record covering the relevant period of review, Mr. Moser provides an overabundance of medical evidence covering periods past his date last insured.  *See, e.g.*, [#14-3; #14-4; #14-10; #14-11; #14-12; #14-13; #14-14; #14-15].  Although

this evidence corroborates Mr. Moser's subjective complaints of worsening lumbar, leg, and foot pain, it does not support Mr. Moser's claim that the ALJ failed to consider the medical necessity of a cane while standing. *See Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (holding that an ALJ's hypothetical to the VE to make an RFC assessment "must include all (and only) those impairments borne out by the evidentiary record."). Treatment records beginning in the fall of 2010 and extending through 2013, repeatedly indicate that Mr. Moser reported that he had "no pain he would like to talk about today;" no falls within the last six months, and no fear of falling; that he retained 5/5 motor strength in his upper and lower bilateral extremities; that he moved all extremities well; ***ambulated without assistance***; and showed no signs of edema in his bilateral lower extremities. *See, e.g.*, [#14-10 at 247, 260-261, 264-265, 267, 276, 285-297, 300, 305; #14-11 at 387, 418; #14-12 at 423-424, 426; #14-15 at 599]. Although some of these medical records indicate that Mr. Moser struggles to get from sitting to standing, *see, e.g.*, [#14-11 at 387 ("He did appear uncomfortable with change of position from sit to stand."); #14-13 at 519 ("Sitting position, takes multiple steps to get going—stable"); #14-15 at 596 ("He uses his cane to arise from a seated position with mild to noticeable discernible discomfort")], nothing indicates that use of his cane while standing is a medical necessity.

Mr. Moser seemingly bases his argument on his own allegations and opinions contained in the evidentiary record, and on an August 23, 2013, Physical Capacity Evaluation compiled by Ms. DesJarlais. [#19 at 4; #14-15 at 602-605]. However, the ALJ accorded little weight to both. *See* [#14-5 at 78, 80]; *see also* 20 C.F.R. § 416.913(d)(1) (listing nurse-practitioners among medical sources who are not "acceptable medical sources"). Regarding Mr. Moser, the ALJ concluded, and the evidentiary record demonstrates, that an abundance of evidence contradicts his self-reports regarding the severity of his symptoms. *See* 20 C.F.R. § 404.1528(a)

("Symptoms are your own description of your physical or mental impairment.  Your statements alone are not enough to establish that there is a physical or mental impairment.").  The burden was on Mr. Moser to "show more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997); *see also Cochran v. Colvin*, 619 F. App'x 729, 731-32 (10th Cir. 2015) (rejecting Ms. Cochran's contention that the ALJ committed harmful error by failing to consider her limited hand functionality at step four because the evidentiary record did not support her contentions).  Similarly, the ALJ found Ms. DesJarlais' evaluation unpersuasive because it came nearly three years after Mr. Moser's date last insured.  [#14-15 at 602-605].  She reported that Mr. Moser could not sit, stand, or walk for more than thirty minutes at a time; however, there is no mention of the necessity for a cane when doing so and she reported that Mr. Moser had no limitations in doing repetitive reaching, handling, or fingering.  [*Id.* at 602-603].  Considering the record as a whole, the ALJ found Ms. DesJarlais' evaluation inconsistent with the objective medical evidence, and concluded that Mr. Moser was capable of performing light work with the need for a cane to ambulate and no leg or foot controls.  [#14-5 at 80-81].  This court finds no error in that conclusion, given the fact that Ms. DesJarlais' evaluation post-dates Mr. Moser's last date of eligibility, March 10, 2010, by a number of years.

Ultimately, it is Mr. Moser's burden "to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists."  *Wall v. Astrue*, 561 F.3d 1048, 1063 (10th Cir. 2009) (quoting *Flaherty*, 515 F.3d at 1071).  While an ALJ must carefully consider Mr. Moser's subjective self-reports of pain and functional limitations, *Bell v. Colvin*, 645 F. App'x 608, 611 (10th Cir. 2016) (citing SSR 96–7p, 1996 WL 374186, at *1), the court is persuaded that the ALJ properly weighed both the objective medical evidence and Mr. Moser's own self-reports.  Therefore, this court concludes that substantial evidence supports the

ALJ's RFC assessment and the ALJ did not err when he limited the RFC to allow for a cane to ambulate, rather than extending it to Mr. Moser's ability to reach, handle, and finger while standing. *See Grogan*, 399 F.3d at 1261-62 (holding that a decision is not supported by substantial evidence "if it is overwhelmed by other evidence in the record"); *Knight ex rel P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014) (holding that the court's review of the ALJ's decision is limited to whether substantial evidence supports that decision).

## III.    Step Five

Mr. Moser also challenges the ALJ's decision at step five of the sequential analysis. Specifically, he alleges that the ALJ erred when he concluded that Plaintiff could perform the three light exertional jobs identified in the national economy, despite his limited hand functionality.  [#19 at 5-7].  For the same reasons discussed above and those below, the court finds this argument unconvincing.

At step five of the sequential analysis, "the burden of proof shifts to the Commissioner [] to show that the claimant retains sufficient RFC to perform work in the national economy, given her age, education, and work experience."  *Hackett*, 395 F.3d at 1171; 20 C.F.R. § 404.1520(a)(4)(v).  This also requires the ALJ to consider any exertional and nonexertional limitations that may impede the claimant's ability to perform the identified work.[9]  SSR 83-14. The ALJ found that Mr. Moser could perform light work,[10] which "require[s] gross use of the

---

[9] "[E]xertional limitations [standing, walking, sitting, lifting, carrying, pushing, and pulling] affect an individual's ability to meet the strength demands of jobs, and nonexertional limitations or restrictions affect an individual's ability to meet the nonstrength demands of jobs." SSR 96-4p.

[10] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

hands to grasp, hold, and turn objects." SSR 83-14. Accordingly, an ALJ must consider any such limitations on these functional abilities and any impacts those limits have on the number of light jobs available in the national economy that the claimant is functionally capable of performing. SSR 83-14.

Here, the ALJ concluded that three jobs existed in significant numbers in the national economy that Mr. Moser could perform. [#14-5 at 82, 95]. These included a storage facility rental clerk (42,041 jobs); an assembler of small products (235,910 jobs); and a cashier II (806,364 jobs). [*Id.* at 82-83, 95]. In reaching this conclusion, the ALJ considered Mr. Moser's ability to perform light work and the additional limitations that impeded his ability to "perform all or substantially all" of the exertional requirements. [*Id.* at 82]. Explicitly, his need for a cane while ambulating, his inability to use leg or foot controls, and his ability to only occasionally bend, squat, and kneel. [*Id.* at 77, 82]. Additionally, the ALJ relied on the VE's testimony identifying these jobs in the national economy, and his testimony that Mr. Moser could perform such jobs. [*Id.* at 82, 95]. Therefore, the ALJ concluded that Mr. Moser was not disabled, and denied his claim. [*Id.* at 83].

Mr. Moser challenges the ALJ's findings on the basis that the ALJ did not properly consider how Mr. Moser could perform these jobs given his use of a cane while walking and standing. [#19 at 5]. Mr. Moser argues that light work, especially the three jobs identified by the ALJ, all require constant use of *both* hands. [*Id.* (emphasis in original)]. Specifically, each job requires frequent reaching, handling, and fingering, which Mr. Moser cannot perform given that he requires the use of a cane while both walking and standing. [*Id.* at 5-6]. Because of this, Mr. Moser argues, the ALJ erred at step five by failing to address the inconsistencies between the

VE's testimony that he could perform such work and the Dictionary of Occupational Titles' ("DOT") descriptions of each jobs' requirements.  [*Id.* at 5-6; #21 at 2].

When an ALJ relies on "expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the [DOT]."  *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 2005); SSR 00-4p.  Further, it is the ALJ's responsibility to "elicit a reasonable explanation for any discrepancy on this point."  *Hackett*, 395 F.3d at 1175 (quoting *Haddock*, 196 F.3d at 1087).  At the September 24, 2013, hearing, the ALJ posed a hypothetical question to the VE, one that mirrored Mr. Moser's RFC, to which the VE responded that such an individual could perform jobs as a storage facility rental clerk (DOT 295.367-026); an assembler of small products (DOT 739.687-030); and a cashier II (DOT 211.462-010).  [#14-5 at 95].  The ALJ continued and asked if the VE's testimony was "consistent with the [DOT]?"  [*Id.*].  The VE responded that there were no inconsistencies with the DOT, and areas not addressed in the DOT, such as Mr. Moser's use of a cane for ambulation, were accounted for based on the VE's twenty-plus years as a vocational rehabilitation counselor.  [*Id.*]; *see also* SSR 00-4p (explaining that information about a job's requirements that is not found in the DOT may be supplemented by a VE's experience in job placement or career counseling); *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (holding as justifiable the ALJ's reliance on the VE's professional experience in resolving inconsistencies with the VE's testimony and the DOT).  The ALJ asked no further questions of the VE.

Mr. Moser contends, however, that the ALJ was required to inquire more about his ability to perform these three jobs, given that he could reach, handle, and finger with only one hand. [#19 at 6-7].  However, as discussed above, there is no evidence in the record, nor did Mr.

Youngman make the argument at the September 23, 2013, hearing, that Mr. Moser was limited to the use of only one hand.   In addition, the ALJ's hypothetical question to the VE was consistent with both Mr. Moser's RFC and the DOT.   ALJs are not required to "exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning.   The standard is one of reasonable good judgment." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir.1997).   Further, an ALJ is generally entitled to "rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored."   *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir.2004).   At the hearing, Mr. Youngman added only one variation to the ALJ's hypothetical: would the claimant be able to work any of the three jobs identified if that individual could only sit or stand for thirty minutes at a time before requiring a ten minute break?   [#14-5 at 96].   At no point did Mr. Youngman inquire about an individual's ability to perform the identified jobs while using a cane to stand.   Thus, the ALJ's step five conclusion focused on the evidentiary record as a whole and the testimony of the VE at the hearing.

As discussed, the evidentiary record is silent on Mr. Moser's need to use a cane while standing.   *See* [#14-13 at 516-521 (treatment notes from the relevant period under review report only monthly trips for medication refills and further complaints of lumbar pain)].   Instead, there is an abundance of evidence suggesting that Mr. Moser retained steady balance and 5/5 motor strength in his upper and lower bilateral extremities without the use of a cane.   *See, e.g.*, [#14-10 at 247, 260-261, 264-265, 267, 276, 285-297, 300, 305; #14-11 at 387, 418; #14-12 at 423-424, 426; #14-15 at 599].   For these reasons, the ALJ did not err when falling to inquire further about Mr. Moser's ability to perform the three jobs identified, as the record does not support Mr. Moser's contention that he requires a cane while standing.   *See Evans*, 55 F.3d at 532 (holding

that vocational inquiries when making an RFC assessment "must include all (and only) those impairments borne out by the evidentiary record"). Therefore, substantial evidence supported the ALJ's conclusion at step five. *See Ellison,* 929 F.2d at 536.

## CONCLUSION

The court is satisfied that the ALJ considered relevant facts and that the record contains substantial evidence from which the Commissioner could properly conclude under the law and regulations that Mr. Moser was not disabled within the meaning of Title II of the Social Security Act and therefore not eligible to receive Disability Insurance Benefits. Accordingly, **IT IS SO ORDERED** that the Commissioner's final decision is **AFFIRMED** and this civil action is **DISMISSED**, with each party to bear his own fees and costs.

DATED: September 13, 2016                    BY THE COURT:

s/Nina Y. Wang
Nina Y. Wang
United States Magistrate Judge